Mr. Tucci, good morning. Good morning, Your Honor, excuse me, I'm sorry. Whenever you're ready, no rush. May it please the Court, my name is Amir Tucci and I represent the appellants in this appeal. I would like to reserve two minutes for rebuttal. On February 23, 2024, the appellants were designated by OFAC to its SDN list for allegedly operating in the metals and mining sector of the Russian Federation economy, and based on the law, they should not have been. OFAC itself defined the term metals and mining sector of the Russian included. By their own words, in their brief in this case, they are urging a broad and expansive view that goes beyond the text of the language that is contained in that regulation and specifically, I'm talking about 31 CFR 589.325, which I'll refer to as 325, Section 325 for ease of reference. First of all, there are a lot of different arguments floating around in this case about the meaning of procure and geographic access and so on. I think your best one, and it's a very strong one, is that geological materials means unrefined stuff, not bull bars or diamond rings. You didn't make that argument below. Actually, you argued the opposite below. You used geological materials as shorthand for finished goods. I don't believe that we use it for finished goods. If you could point me to what you're referring to, I would appreciate it. Our entire argument below was that the regulation was based on the production process, distinguishing between the manufacturing of these products and their retail sale. Our argument is within the same thing, within the same vein of argument in terms of what type of this includes. You said I'm getting this from, first of all, there's nothing to express in the summary judgment briefs that geological materials means raw as opposed to finished. The way you frame the closest you come is this argument. You say there's no allegation purchased any precious metals from inside Russia. You use precious metals as a shorthand, which to me sounds much more plausible that that includes finished goods as well as raw materials. And then at page six of your reply, you say that the whole scheme, the whole reg is focused on the production of geological materials, not their sale. So you're saying that the geological material is the gold bar or the diamond ring, and this is all about producing that rather than selling it. Well, I would disagree with that characterization of what we were saying. What we were saying was in that context was to the extent that these geological materials are taken out of the ground and then produced for retail sale eventually, we were distinguishing between that activity and what the appellants were engaged in. And there is a tail end of the production process, which we've acknowledged, which is the transportation of the finished goods. Obviously, a manufacturer, the final step in the process of manufacturing is delivering it to the market. But the appellants didn't engage in that activity. It seems like it's a different argument from the one you're pressing in the blue brief, which is that geological materials means raw materials. You clearly make an appeal and you make it forcefully, and I find it somewhat persuasive, but it's not in the summary judgment briefs in those terms. The reason why the geological materials argument specifically is raised here is in the context that you're talking about, Your Honor, is that the way that the district court construed it to basically remove the preparatory language to say procuring geological materials, that was not an argument that was raised by the government in the district court. It wasn't something that we had an opportunity to respond to in terms of the court looking at it that way. Fair enough. And you have that argument, which sort of combines the string of gerunds and the geological materials point. But, I mean, you argued below this very distinct and, to me, very unpersuasive argument that procure means the only sensible object of procure is mining equipment, and you lost on that. And you didn't make, I mean, I'm repeating myself, but didn't make the argument keyed to geological materials. We didn't make that argument specifically, Your Honor, but I would say that that argument is not precluded on a de novo review because it's part and parcel of the overall argument that we were making. In terms of those specifics about procuring, yes, we argued that it has an industry-specific meaning to it. We continue with that, and I do want to respond to that in terms of what the government has pointed out in terms of FAQ 1117. But the overarching, the reason why I don't think that the argument that we made below and the argument that we're making here are any different is because they're part and parcel of the same argument that is part of the production process. And distinguishing between... They have the same feel, but they put the phrase, treat the phrase geological materials differently, and I'm struggling to think, is that close enough for preservation? I would argue that it is, Your Honor, because at the end of the day, the geological materials, whatever you have in the refined materials that are out at market, at some point they were the geological materials. So it's not that we're saying, we're not saying that gold is not a metal. That's not what we're saying. We're not saying that gold didn't emanate from a geological material. But in terms of the idea of what is this regulation specifically geared towards, what activities it's specifically geared towards, our overarching argument was that it was geared towards the production process, not the retail sale. And that goes to our arguments in terms of FAQ 1029 and 1070, where OFAC clearly was distinguishing between retail sale and manufacture. So I understand your point. The OFAC determination does not support that view. The OFAC determination is very broad. Any person determined pursuant to the executive order to operate or have operated in this sector shall be subject to... Operated in this sector. That's the broad read, which is what they're acting on. And the determination's higher than the questions and answers in terms of its authority on the books, I think. At least that's where I'd be more inclined to look if I was going to defer to something or get a sense of the government's position. That's where I've always gone, is to the determination, not the Q&A. Okay. So with respect to the, in terms of the designation of anybody who operated in that sector, but that's not my... That's not the argument here. The argument here is specifically when they do define the sector. They can say, we're going to sanction anybody in the lumber industry, anybody who's operating in the lumber industry. And they actually don't even need to provide a definition of what it means to operate the lumber industry. But once they do, once they do, they've confined it to the textual language of what it means to operate in that. And that's important for market participants to understand what are we allowed to do? What are we not allowed to do? Or if we've engaged in that activity before, are we subject to sanctioning? And what response are we going to take? So in terms of the breadth, I do not dispute in any way that OFAC has a tremendous amount of craft the rules, to craft them as broadly as they want to. But once they do, the text matters, the text of what they've said. And what they said in the metals and mining sector was, any actual process or industry of extracting at the surface or underground, and that's a key phrase here, ores, coals, precious stones, and any other minerals or geological materials in the Russian Federation. And it's been our position from the very beginning that all of whatever read on this, it has to emanate from the Russian Federation. So to, for example, it's actually difficult to understand exactly what the government is arguing at different points to say whether, is it Russian individuals who are purchasing metals regardless of where they came from? Is it other people buying Russian materials regardless of where those came from or where the defendants, the appellants got them? But at its core, the limitation here is in the Russian Federation and at the surface or underground. But it's a limitation for in Russian Federation dealing with the materials being there, as opposed to who the procurer is or where their location is. I would argue, yes, absolutely. It's based on where the geological materials are being extracted from. And so when we get to procure it, though, that person or entity doesn't have to be in Russia? Or are you suggesting that they have to be the same, the materials and the activity? What I'm arguing is that the procuring relates back, because when we get to that litany of the other processes or the other, I shouldn't say processes, because processing is one of the words, but when we get to that list, procuring, processing, manufacturing, or refining such geological materials, that such geological materials is referring back to the geological materials in the Russian Federation. So what we're talking about is procuring those in those, in that area and going... So if there's no evidence that your client buys raw materials, right, the stuff out of the ground, right? Your client is buying finished gold. I haven't seen the classified record, but based on what I know of the case... Let's just assume that. So there's this threshold issue about geological materials or procuring geological materials. If it's unrefined stuff, you win. If it's refined stuff, then we come to this geographic nexus point, which I think Judge Childs was talking to you about. So you have a buyer in Germany or Lichtenstein or wherever buying gold, finished gold, right? Assume that for purposes of the question. Buying finished gold from Russians. If the gold is in Russia, it seems like this is clearly covered. If it's coming from... German buyer, Russian in Russia selling gold to German buyer, that's covered. Yeah, I would concede that it is. I would concede that it's under the transportation, because if the person is involved in the transportation out of Russia, then that would might be procurement. But so then the question is, the government says, well, we're focused on buying gold from Russians. And as a legal matter, that's not enough, right? That's your Alex Ovechkin hypothetical, right? If you're a capitalist man, sure. I like that. I've used Ovechkin before as hypos. But why can't they reasonably assume... I think that there would be a lot... I practice in New York. I think there would be a lot of people on 47th Street that would be shocked by that assumption. Because there's a lot of Russian nationals living in this country. There's a lot of Russian nationals living in Europe. And just they're purchasing gold because they want to invest in it or for whatever reason. I don't think that it's fair to assume that it's coming from Russia or that there's a Russian nexus under this determination. I mean, if you took the government's broad reading to its logical conclusion, if I were to have, say, 10 years ago, when the financial markets were collapsing, I wanted to invest in gold to protect my investments. And some of that gold was of Russian origin, I would be subject to sanctioning just because I had purchased the finished product in another country, even though I had nothing to do with transporting it from Russia or anything else. Similarly, if a Russian person living in the United States is going to buy gold, I mean, if we're going to tell the entire market, let me put it a different way. Financial services sector. OFAC has sanctioned that sector of the Russian Federation economy. They've defined that sector. But they haven't defined it. They've never indicated that a Russian national holding a bank account in the United States would be something that would be sanctionable conduct or even holding a bank account. The reasonableness of the inference might depend on the nature of the buyers, the extensiveness of the buying, right? Well, I think then you're talking about something a little bit different because I also recognize that in terms of the deference that this court owes to OFAC, I would argue it's not on their legal interpretation. It would be in terms of their fact-gathering and their analysis of those facts. But I would think that— I'm saying, suppose we say on the law, de novo review, we say the standard means the transaction has to involve gold that is in Russia. But then they get deference. They get a degree of deference if they're going to say, well, okay, but we can fairly assume that, you know, this buying, whatever it is, which we can't talk about and you don't know, supports a reasonable inference that gold is coming from Russia. I think you would have—if it's based on the nationality or if it's based on the—simply on the origin, regardless of where it's originating from at that moment, then no, I don't think it's a fair assumption. If it's originating from Russia, then I think—and it's the finished product—then I would agree that—and if that's what we're dealing with, then that's a different story because—but then I would say that that is within the transportation to, from, or within the Russian Federation. So that's what I think characterizes it. And to draw the point, I know that the government has drawn a distinction on EO-14068 and the FAQ-1070, but that—they haven't cited any reason to believe that an executive order in another circumstance can't give some sort of guidance on this. But OFAC specifically said, they specifically have a determination and an executive order that there's not to be importation of gold from—of Russian origin into the United States. They've made that distinction, and they didn't—and they opened it up for—up until June 22nd, 2022, indicating that that importation and that origin mattered, and where you were getting it from, where you were specifically buying it did matter. Judge Johns, any questions? Judge Evans? Yeah. Okay, we'll give you a moment. Thank you, Your Honor. Janda. Good morning, Your Honor, and may it please the Court, Sean Janda for the Federal Government. Under Executive Order 14-024 and the 2023 Sectoral Determination, OFAC may designate any individual or entity who has operated in the metals and mining sector of the Russian Federation economy. OFAC concluded that Rheingold and the Diegelman plaintiffs have so operated in a variety of ways because they've bought and sold precious metal in transactions involving or on behalf of Russia-based persons, have collaborated with Russia-based metals companies to disguise the origin of Russian precious metals, and have assisted Russian persons with laundering funds and circumventing international sanctions. Is this rule, with respect to thinking about the plain meaning of procure and that meaning simply to obtain, can the rule be too broad-sweeping if somebody buys this on the secondary market? So I don't think so, Your Honor. Let me say a couple things. I mean, one, I think procure just means to acquire, maybe to acquire with some degree of effort, and that's certainly what the plaintiffs here were doing. You know, in a different case involving someone who is two, three, four steps down the line, if there ever were such a case, the court might be able to think more about whether procure necessarily involves a commercial acquisition rather than sort of a retail secondary down-the-line acquisition. There might also be work done in that sort of case by the necessary nexus to the Russian economy. At least right now, as you stand in front of us, you're not thinking about that downward-shifting. I think for purposes of this case, all the court needs to say is that when you have these precious metals companies, this precious metal firm that is acquiring in these commercial transactions precious metals on behalf of— Precious metals in finished form. Correct. I think the court can certainly assume that that's what's happening. And, I mean, I can talk about the geological materials argument. I mean, number one— Finish. I think the court can just focus on that for purposes of the—on the commercial acquisition, which clearly constitutes procurement and leave for another day. Again, if OFAC can reward a sanction, that sort of downstream person, I don't think the plaintiffs have pointed to anyone who OFAC has actually designated on the basis of those sorts of transactions that might cause concern. Focusing on the geological materials argument— Let's talk about that, and it's not just geological materials. It's the entire phrase procuring, processing, manufacturing, or refining geological materials, which follows a phrase extracting at the surface or underground. Do you think that covers gold traders? Yes. Do you think we would say, you know, does Tiffany's procure geological materials? I think so. I mean— It's like a wildly implausible use of language to me. So let me say two things. I mean, number one, I think here you're not talking about—you're talking about sort of refined or finished gold. You're not talking about, as I understand it, gold or silver that has been made into jewelry or watches or sort of retail goods in that way you're talking about. Right, but it's not the stuff coming out of the ground. It's not the stuff that's come immediately out of the ground. I mean, that's certainly true. But beyond that, number one, I think when you think about geological materials sort of in combination with precious stones, with coal, with the sort of other items in that list, it's seemingly natural to refer to finished diamonds, cut diamonds, processed diamonds as precious stones. Precious stones is the best term you have, but the gerunds all seem like they're focused on taking stuff out of the ground and then processing it into usable goods. And some of the nouns, ores and coals, are the stuff you take out of the ground. I mean, I think then you get to— The overall focus of this just does not seem like it covers— And I think then you get to transporting it, which I think, I mean, even from the podium, my friend on the other side has acknowledged that transporting processed or finished or refined goods, geological materials, counts. And so at that point, I mean, once— Well, transporting them, which raises the question what the them is, just takes us back to the geological materials. I mean, maybe I'm wrong. I understood my friend on the other side to say from the podium today that he thinks that after the refiner refines the gold and then transports it, that that is covered, which, again, I mean, sort of drawing a distinction between— Would you work with me? Suppose I think them is just a pointer back at geological materials. Well, I think that if plants acknowledge that transporting them refers to transporting finished products and them just refers back to geological materials, I don't know how you cut off the reference back or limit the geological materials in the section. Trying to figure out the best reading rather than something that's driven either by a concession at the podium here or by a possible district court forfeiture. And then the other thing I'll say is I think just taking a step back, the sort of bottom line question is whether the plants have operated in the metals and mining sector of the economy. And the definition here is not— I have two reactions to that. One is you've conceded below that the meaning of that comes from this 31 CFR 589. Right. I don't think that the sort of list of activities in the regulatory definition is meant to be exclusive. It includes these things. It's not only these things. And so just, again, sort of at the kind of initial step, the question is whether buying, selling, transporting gold, sort of gold bars, silver bars, whatever it is, constitutes operating in the metal sector. I think the answer just has to be yes. Your district court papers say as a baseline the parties agree about the scope of activity that falls within the phrase operate or have operated in the metals and mining sector. The description in 31 CFR— I mean, I don't think we have ever conceded, and we certainly wouldn't intend to concede that the activities are exclusive. And the FAQ 1117 that's discussed in the briefs, which talks about the provision of goods to sort of companies operating in that sector, also potentially constituting operating in that sector, I think makes very clear that OFAC doesn't understand that the activities listed in the definition are exclusive. I mean, I think you can argue that the plain meaning or sense of the defined term, which is metals and mining sector, can influence how we read the definition. But I'm not sure how much that helps you. Metals and mining sector in the singular likewise seems focused on coming out of the ground. And I still have my linguistic intuition that you wouldn't say that Tiffany's operates in any metals and mining sector. I don't know exactly what Tiffany's does. I'm just assuming someone who's buying polished, final, you know, shiny gold bars or beautiful diamonds or things like that. Yeah. And I think certainly, look, if Tiffany's is buying gold bars, is procuring gold bars from Russia, operating—the act of procuring gold bars from Russia, in our view, would constitute operating in the metals sector of the Russian economy. And I think the other piece of this is the definition and the designation have to be interpreted in the context of the purpose of the sanctions regime, which is to isolate Russia from the international economy. And if the sanctions could be so easily circumvented, if Russia could access the international economy by refining the gold first and then selling it internationally, I mean, that would just be an entirely self-defeating sanctions regime. I don't think there's any reason to think that OFAC would have intended to construct a sanctions that can be sort of circumvented in that very easy way. And I'm just trying to figure out how far you're going beyond the raw materials, you know, for geologic materials. Are you extending it to something after refining or after resale? So, I don't— What's that category that we're supposed to capture here? Because I just want to make sure that we're coming within any type of limiting principle. So, as I understand it, what we're talking about in this case is materials that have been processed or refined, but they have not been sort of made into retail consumer goods. So, we're not talking about jewelry or watches. We're talking about gold bars or silver in processed or refined form. I would caution the court against saying that that is the outer limits of what the definition reaches. I think OFAC has not sort of exhaustively—attempted ever to exhaustively document the outer reaches of this definition, and the court doesn't need to go there. But certainly, in this case, we're focused on materials—metals that have been refined, but that are not further processed into those sorts of consumer goods. And so, if the court thinks that that distinction is relevant or could be relevant, it could certainly kind of leave on the table the question about, you know, if Tiffany's is buying gold watches, whether that would count. But the acquisition of even processed or refined goods, I think certainly with the purpose, with the exceedingly expansive definition, I mean, I think the definition is meant to, A, say includes, so it's not meant to be exhaustive, and B, talks about sort of any other geological materials, which is meant to be an expansive phrase and is meant to capture, I think, a wide variety of geological materials. And again, I think the forfeiture point here, too, is exceedingly persuasive in this argument. It's just nowhere in the district court papers. And I'm going to take you to that next category of to, from, or within Russia. So, let's—I want to see how attenuated you think that nexus needs to be with Russia. So, let's think about if there was—would this cover a Swiss trader buying Russian gold from a Dubai intermediary? I think it would depend on the particular facts and circumstances. I mean, there are two things I want to say. One is, as I said before, I don't think that the list of activities is meant to be exclusive, and so I don't think sort of routing your transactions through a Dubai intermediary is going to get you out of the procurement of the gold from Russia. That being said, again, it would probably depend on exactly—if you're thinking about whether it counts as transporting from, that would probably depend on exactly what the trader is doing. If the trader is saying, you know, I want you to ship it to this person and then ship it to me, I suspect that OFAC would think that that counts. I think certainly in this case, I can't talk in too much detail about the specifics, but I don't think there's any question here that there's a substantial and direct nexus to Russia. And so, at that point, I don't think the court needs to, again, sort of exhaustively document how attenuated the connection could get while still constituting and operating within the relevant sector of the Russian economy. As a substantive matter, are you saying—you keep focus—you are focusing us on transacting in finished gold with Russian nationals, and that seems to me not the same, not necessarily the same, as transactions involving gold in the Russian Federation, which is the regulatory term? I think you need an inference from one to the other. Yeah, I mean, number one, I don't think the regulatory term is talking only about transactions in the Russian Federation. I mean, if—I think even the plaintiffs would concede that if someone takes—if a Russian national takes the raw, unrefined gold and, you know, takes it across the border to Belarus and then sells it to the refinery in Belarus, that the Russian refinery is procuring the geological materials and operating within the relevant sector of the Russian economy, even though it's not the one that sort of transported the gold or even though the gold wasn't in Russia at the precise moment that the Russian refinery acquired it. So I don't think the gold has to be in Russia at that moment. I think there certainly has to be enough of a nexus to the Russian economy that you can fairly say that the individual or the entity is operating in the relevant sector of the Russian economy, and here there's just so much of a commercial— Well, is the act of disguising those materials still an act of procuring? I think—I'm not sure that disguising is procuring. I think certainly the disguising and collaborating with the Russian-based metals company to disguise the origin of the metals constitutes, again, sort of working in the relevant sector of the economy. And this gets back again—the list of terms in the regulatory definition, it really is not meant to be exclusive, and so providing goods and services to particularly these sorts of specialized— Did you also claim that appellants here disguised it? What we have said publicly is that the appellants sort of collaborated with Russian-based metals companies to disguise the origin of Russia-purchased metals. Right. That's what I'm trying to get at about disguising, if you're telling that it's procuring. I think certainly the collaboration on the disguising can be part of the act of procuring, and again, even if—I think this is a really important point that I do want to get across. Even if all someone was doing—I mean, imagine you have a fully Russian entity, and their whole business was working with Russian refineries to disguise the origin of Russia-purchased metals. They're not buying them, they're not selling them, but they're providing that service of helping to disguise them. I think we would say that that counts as operating within the metals and mining sector of the Russian economy, even though it's not buying, procuring, selling, transporting. It's providing these sorts of specialized services to the entities operating in that part of the economy. And to the extent the court's looking for, again, a place to get that aspect of the definition, I think the FAQ 1117, which talks about how it may constitute operating within the sector to provide goods and services to the people doing the procuring, the buying, the selling. Here, in addition to procuring themselves, that's exactly what you have, and that's enough to— Give me a minute or two on the forfeiture point. I agree with you that they did not raise below an argument that the phrase geological materials includes refined metals as opposed to unrefined metals. But they did make an argument that the word procuring connected—the gerund procuring connected with all the other gerunds, processing, manufacturing, refining, all centered on production rather than sale. Why isn't that—you know, it's linguistically different on what bucket geological materials is going in, but substantively, it's the same thing they're saying here, which is this is directed at something sort of close to the mine and not sale of finished goods. Yeah, and I do think it is linguistically quite differently focused, which is, I mean, a different textual argument. But very similar in general thrust, or this is going to sound pejorative, but vibe. Yeah, but I think that the response to the argument sort of frame—or that argument, which, again, I think is a different argument, is that sort of you're talking about the processing, the refining, and then the procuring at the end of the day, the procuring the finished product, I think. And that fits in with transporting, which, again, I think everyone agrees that transporting can include transporting the finished product, and so procuring it, I think, also could include the finished product. And so I think to make the argument have the sort of legs that they're trying to make it have in this court really requires shifting to the definition of geological materials, which is nowhere in the district court. And I would point the court to the extent that I think the plaintiff's main justification for the shift in argument is they think that the district court adopted some interpretation of procure that we didn't advance. And I would point the court to pages 13 and 14 of our primary summary judgment brief in district court, stocket number 18, which makes for exactly the plain text meaning of procure argument the district court adopted. So I think they were certainly unnoticed that that was how we understood the regulation to work. And if they thought at that point that geological materials didn't encompass or sort of cut off at some point in the refining process, they could have made that argument then. They didn't do it. Judge Childs, anything else? Judge Edwards? Thank you, counsel. Mr. Tucci, rebuttal. Thank you, Your Honor. And I want to return to the question about transportation. You made a comment about a concession at the podium. I'm not sure you made it, but I'll give you a chance to clean it up. No, I want a chance to clean it up because I was sitting there. I had a chance to think about it. And honestly, just candidly, a gear got shifted because I thought you were suggesting something to me that would be news to me. And I was thinking about that. But I do think that that's them refers back to geological materials. And what I would argue is that if you look at FAQ 1029, that reading is confirmed because the 1029 asked the question, how did the prohibitions of Executive Order 14024 and other Russian-related sanctions impact gold-related transactions and persons participating in the gold market? And as it goes through, it delineates—you can actually see it tracking the language in EO-14024 as to what types of activity are prohibited. But it's not saying—it does not say that any transaction of gold coming out of Russia is prohibited. What it says is it may be. And it may be if it's designed to evade U.S. sanctions. That is part of EO-14024. A person can be designated for evading U.S. sanctions. The next bullet is financial services. That was already a designated sector at that time. And it's indicating if you operate in that financial services sector through this transfer of gold, then you are subject to sanctioning. And I don't want to go through every single bullet because I don't want to take up all of the time. But if you look at 1029, what you see is that it is everything that—they are basically saying every single other reason why buying gold out of Russia, the finished product out of Russia, is not per se sanctionable, but rather might be sanctionable for some other reason that has already been stated. And it doesn't matter that this FAQ came out before the determination because—and you can see it—they update these FAQs to reflect new guidance. So why wouldn't they have—they could have easily amended this to say, hey, you know what? We just had this new determination about the metals and mining sector, and 1029 is inoperative. Any purchase now is per se sanctionable. They did not say that. And they very easily could have. So going back to the question of whether the mere purchase out of Russia would be sanctionable conduct, I would say no, Your Honor, because I do think that the them refers back to the geological materials. Judge Childs, any questions? Judge Edwards? I'll give you a sentence or two if you want. Please wrap up. Just on this point of 1117, this goes to our procurement argument, which I gather is not winning favor. But my entire point about 1117 is that goods and services, the procurement of goods and services, that is why they put out that guidance. They carved out a specific exception for safety because the procuring in this section was actually related to that. But that being said, we rest on the arguments in the brief. Thank you very much for your time. Thank you, counsel. The case is submitted.
judges: Katsas; Childs; Edwards